UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 17-20988-CIV-MORENO**

AMTRUST BANK; AMT CADC VENTURE,
LLC; CALIFORNIA COVE AT SAN ELIJO,
LLC,

      Plaintiffs,

vs.

MARIO ALVAREZ and LUIS TRUJILLO,

      Defendants.
_____/

## **ORDER GRANTING IN PART MOTION TO AMEND**

THIS CAUSE came before the Court upon Motion to Amend or Alter Judgment **(D.E. 78)**, filed on **June 1, 2021**.

THE COURT has considered the motion, the response, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is **GRANTED IN PART.**

This case is in the post-judgment posture. The judgment assignee, Cadles, holds a damages Judgment against Mario Alvarez that was rendered by United States District Court for the Southern District of California and has been registered in this District. The original Plaintiff won a judgment against Mario Alvarez in the amount of $24,620,188.41. The judgment was then assigned to Cadles of West Virginia. Cadles served Wells Fargo with a subpoena to produce eleven categories of documents or records pertaining to the Alvarez & Alvarez Irrevocable Trust. The Trust is a non-party and now moves for a protective order on behalf of Wells Fargo pursuant to Fed. R. Civ. P.

26(c). The Trustee of the Trust is Mario Alvarez's mother. Cadles has already taken the Trustee's deposition.

On June 8, 2020, Cadles issued a Rule 45 Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action to Wells Fargo Bank, N.A. The Subpoena sought, among other things, financial and banking information relating to the Trust and judgment debtor.

To refresh your memory, there were a couple key pieces of evidence Cadles used to show a relationship between Alvarez and the non-party Trust. First, a letter from a CPA that indicates the Trust was paying Alvarez's credit card bills at one point. However, this was apparently because the Trust was reimbursing Alvarez for expenditures on its behalf. Second, the Trust purchased a separate judgment of about $14M against Alvarez for $60K—apparently because Alvarez's Mom just wanted to help him out. Third, and most importantly here, the Trust took a $1.6 million mortgage to secure loans taken by various companies.

The Court entered a Protective Order on May 3, 2021. In the Protective Order, the Court **granted** the Trust's request for a protective order to the extent that Cadles sought to subpoena Trust records and documents from Wells Fargo, but **denied** it to the extent that Cadles sought judgment debtor's personal bank account records. The Court's ultimate conclusion was that "Cadles does not show enough of a connection between Alvarez and the Trust to overcome the general rule that a nonparty's financial information should remain confidential."

Cadles now moves to alter or amend the judgment due to what it claims are errors of law and fact. Cadles claims the first error of fact is that Cadles *did* in fact provide evidence that the **Hawaii Mortgage secured the debts of businesses associated with Alvarez.** In its original Order, the Court wrote that "Cadles does not show enough of connection between Alvarez and the

2

Trust to overcome the general rule that a nonparty's financial information should remain confidential." I recommended this finding because the only evidence submitted with the motion for a protective order was a deposition of the Trustee (judgment debtor's mother) where she said that she was unaware if the mortgage was affiliated with Mario Alvarez Jr. and unaware if the proceeds benefitted Mario Jr.

However, the motion to alter or amend the judgment directs the Court to the Trustee's declaration, which was filed in conjunction with an earlier (but no longer pending) motion. That declaration stated the mortgages were "secondary guarantees of business obligations of my sons, either Mario Jr., George, or both acting together, in connection with various businesses. The **Trust itself was an investor in the businesses** for which assets of the Trust were mortgaged to guarantee my sons' interests in the businesses." (emphasis added). Cadles points to this excerpt as the smoking gun that proves the Trust secured judgment debtor's debts. But the Trust points out that the excerpt is still equivocal—the Trustee is not sure *which* son the business obligation belonged to, and it also notes that the Trust was an investor in the assets the Trust was attempting to protect via the mortgage. In other words, it remains unclear whether the Trust was truly acting for the sole benefit of judgment debtor. This is not a "manifest error of fact."

The second alleged manifest error of fact is that the Order stated the judgment debtor was "not a beneficiary" of the Trust. This was a typo. The judgment debtor *is* a beneficiary, although the Trust is generation skipping and judgment debtor is subject to a spendthrift provision. In other words, judgment debtor will never receive a distribution of the trust principle nor can Cadles seize any Trust assets until they are in the judgment debtor's possession.

Finally, Cadles claims the Court made a manifest error of law to the extent it denied discovery from the Trust on its past distributions or payments to Alvarez and instead required

Cadles to obtain that information from judgment debtor's records. Cadles also asks whether the Court intended to deny discovery on past distributions in general from Wells Fargo and other sources, including the alleged Trustee herself, or merely took issue with this specific Subpoena. If Protective Order prohibited discovery in general from Wells Fargo and other third parties on the Trust's previous distributions or payments to judgment debtor, Cadles requests that the Court alter the Order so that Cadles can pursue discovery on Trust distributions, payments, and transactions with judgment debtor, even if that may require issuing another subpoena.

Cadles points out the law allows broad post-judgment discovery. "The rules governing discovery in post-judgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014). "Federal Rule of Civil Procedure 69(a)(2) states that, '[i]n aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person—including the judgment debtor—as provided in the rules or by the procedure of the state where the court is located.'" *Id.* at 139. "It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets." *In re Taylor, Bean & Whitaker Mortg. Corp.*, 620 B.R. 165, 168 (Bankr. M.D. Fla. 2019) (internal citation omitted). But when a judgment creditor seeks to discover the personal financial information of a nonparty (here, the Trust), he or she bears the burden of proving that the information sought is relevant or is reasonably calculated to lead to the discovery of admissible evidence. *Winderting Invs., LLC v. Furnell*, 144 So. 3d 598, 602 (Fla. 2d DCA 2014).

The subpoena at issue here seeks **all documents in Wells Fargo's custody that have any relation to the Trust.** Given the uncertain evidence that the Trust is an alter ego for Alvarez or that there is a "close link" between the two, the subpoena goes too far. However, the Court's order should not be read to prohibit discovery of Mario Alvarez's bank accounts held at Wells Fargo or

4

the previous distributions from the Trust to Alvarez, provided that the movant makes a showing that the information sought will enable to the creditor to collect the debt. *2245 Venetian Ct. Bldg. 4, Inc. v. Harrison*, 149 So. 3d 1176 (Fla. Dist. Ct. App. 2014) ("But while we agree that generally 'discovery in aid of execution cannot be used to pry into the assets and business of persons other than the judgment debtor,' we have also held that a nonparty may be subject to post-judgment discovery where the 'judgment creditor can provide a good reason and close link between the unrelated entity and the judgment debtor.'"); *see Advanced Body Care Solutions v. Thione Int'l*, No. 06-81128-CIV, 2009 WL 10696877 *3 (S.D. Fla. Oct. 26, 2009) ("However, such decision does not prohibit Thione from revising its subpoena and limiting the discovery sought from third parties, including Nature City, to information regarding Plaintiff's assets.").

To the extent that this Court's prior order was interpreted to prohibit such a subpoena, it is amended. The Court was too quick to dismiss the possibility that prior distributions may reveal fraudulent transfers or otherwise executable assets. *2245 Venetian Court Bldg. 4, Inc.*, 149 So. 3d at 1179 ("[T]he creditor has the right to discover any assets the debtor might have that could be subject to levy or execution to satisfy the judgment, or assets that the debtor might have recently transferred.") (internal quotations and citation omitted). However, the prior subpoena was overbroad and the protective order from that particular subpoena remains in place. Cadles itself suggests this possibility in its reply, "[t]he Trust's argument reinforces why Cadles respectfully submits that the Court should alter or amend the Order so that the Order cannot be used to prohibit discovery into past distributions from the Trust to judgment debtor, **even if that requires serving another subpoena specifically tailored to those distributions."**

DONE AND ORDERED in Chambers at Miami, Florida, this 20th of August 2021.

							_____
							FEDERICO A. MORENO
							UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record